# RIDER *v.* UNITED STATES.

## ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO.

No. 40. Argued November 1, 1899. — Decided May 14, 1900.

The fourth and fifth sections of the River and Harbor Act, approved September 19, 1890, provide: "§ 4. That section nine of the River and Harbor Act of August 11th, 1888, be amended and reënacted so as to read as follows: That whenever the Secretary of War shall have good reason to believe that any railroad or˜ other bridge now constructed or which may hereafter be constructed over any of the navigable waterways of the United States is an unreasonable obstruction to the free navigation of such waters on account of insufficient height, width or span, or otherwise, or where there is difficulty in passing the draw-opening of the drawspan of such bridge by rafts, steamboats or other water crafts, it shall be the duty of said Secretary, first giving the parties reasonable oppor-

tunities to be heard, to give notice to the persons or corporations owning or controlling such bridge so to alter the same as to render navigation through or under it reasonably free, easy and unobstructed; and in giving such notice he shall specify the changes to be made and shall prescribe in each case a reasonable time in which to make them. If at the end of such time the alteration has not been made, the Secretary of War shall forthwith notify the United States District Attorney for the District in which such bridge is situated to the end that the criminal proceedings mentioned in the succeeding section may be taken. § 5. That section ten of the River and Harbor Act of August 11th, 1888, be amended and reënacted so as to read as follows: That if the persons, corporations or associations owning or controlling any railroad or other bridge shall, after receiving notice to that effect, as hereinbefore required, from the Secretary of War, and within the time prescribed by him, wilfully fail or refuse to remove the same, or to comply with the lawful order of the Secretary of War in the premises, such person, corporation or association shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by a fine not exceeding $5000, and every month such person, corporation or association shall remain in default as to the removal or alteration of such bridge, shall be deemed a new offence and subject the person, corporation or association so offending to the penalties above described." 26 Stat. 426, 453, c. 907. Proceeding under that act the Secretary of War gave notice to the County Commissioners of Muskingum County, Ohio, to make on or before a named day certain alterations in a bridge over the Muskingum River, Ohio, at Taylorsville in that State. The Commissioners, although having control of the bridge did not make the alterations required and were indicted under the act of Congress. *Held*, that however broadly the act of Congress may be construed it ought not to be construed as embracing officers of a municipal corporation owning or controlling a bridge who had not in their hands, and under the laws of their State could not obtain, public moneys that could be applied in execution of the order of the Secretary of War within the time fixed by that officer to complete the alteration of such bridge.

THE case is stated in the opinion of the court.

*Mr. Frank H. Southard* and *Mr. Simeon M. Winn* for plaintiffs in error.

*Mr. George Hines Gorman* for defendants in error. *Mr. Solicitor General* was on his brief.

MR. JUSTICE HARLAN delivered the opinion of the court.

This is a prosecution under a criminal information filed on

behalf of the United States against the plaintiffs in error as Commissioners of the County of Muskingum, Ohio, having power under the laws of Ohio to control, alter and keep in repair all necessary bridges over streams and public canals on all state and county roads.

The information was based upon the fourth and fifth sections of the River and Harbor Act, approved September 19, 1890.

Those sections are as follows:

" § 4. That section nine of the River and Harbor Act of August 11th, 1888, be amended and reënacted so as to read as follows: That whenever the Secretary of War shall have good reason to believe that any railroad or other bridge now constructed or which may hereafter be constructed over any of the navigable waterways of the United States is an unreasonable obstruction to the free navigation of such waters on account of insufficient height, width of span, or otherwise, or where there is difficulty in passing the draw-opening or the draw-span of such bridge by rafts, steamboats, or other water craft, it shall be the duty of the said Secretary, first giving the parties reasonable opportunities to be heard, to give notice to the persons or corporations owning or controlling such bridge so to alter the same as to render navigation through or under it reasonably free, easy and unobstructed ; and in giving such notice he shall specify the changes required to be made, and shall prescribe in each case a reasonable time in which to make them. If at the end of such time the alteration has not been made, the Secretary of War shall forthwith notify the United States District Attorney for the District in which such bridge is situated, to the end that the criminal proceedings mentioned in the succeeding section may be taken.

" § 5. That section ten of the River and Harbor Act of August 11th, 1888 be amended and reënacted so as to read as follows: That if the persons, corporation or association owning or controlling any railroad or other bridge shall, after receiving notice to that effect as hereinbefore required from the Secretary of War and within the time prescribed by him, wilfully fail or refuse to remove the same, or to comply with the lawful order of the Secretary of War in the premises, such persons, corpo-

ration or association shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by a fine not exceeding $5000, and every month such persons, corporation or association shall remain in default in respect to the removal or alteration of such bridge, shall be deemed a new offence, and subject the persons, corporation or association so offending to the penalties above described." 26 Stat. c. 907, 426, 453.

Under power conferred by an act of the General Assembly of Ohio, approved March 9, 1836, the authorities of the State, between 1836 and 1840, constructed a series of locks and dams on the Muskingum River between Marietta and Zanesville.

About the year 1838, under the authority of the State, a dam was constructed across the main channel of the Muskingum River at the rapids which entirely obstructed navigation at that point, but locks and a side-cut canal were constructed so that boats could pass southward to the river below the rapids. Immediately below that dam the Commissioners of Muskingum County, about the year 1874, under the authority of the state, constructed a bridge across the river — the bridge here in question — whereby the towns of Duncan Falls and Taylorsville on opposite sides of the river were connected.

On the 2d day of May, 1885, the State of Ohio made a cession to the United States of the Muskingum River with its improvements. The act of cession contained this provision: " And for the purpose of enabling the United States to expend any sum of money that is or may hereafter be appropriated by Congress for the improvement of the Muskingum River, the State of Ohio hereby transfers and cedes to the United States the eleven locks and dams heretofore constructed by said State on said river, together with all the grounds, canals and appurtenances belonging to the same, subject to the provisions of the preceding sections of this act, as to the jurisdiction of the United States over the lands and buildings authorized to be acquired and constructed by said sections, and imposing penalties for injuries to said work which shall extend and apply to the said eleven docks and dams and their appurtenances hereby transferred and ceded to the United States, but the custody and ownership of said Muskingum River improvement shall remain

in the State of Ohio, until such time as the United States appropriates sufficient money to properly improve and operate the same." 82 Laws of Ohio, 220, 221.

The cession was accepted by the United States as is shown by the River and Harbor Act of August 5, 1886, c. 929, which contained this clause: " And the United States hereby accepts from the State of Ohio the said Muskingum River improvements, and all the locks, dams and their appurtenances, and the canals, belonging to said improvement, and all the franchises and property of every kind and rights in said river, and its improvements, now owned, held and enjoyed by the State of Ohio, including all water leases and rights to use water under and by virtue of any lease of water now running and in force between the State of Ohio and all persons using said water, hereby intending to transfer to the United States such rights in said leases and contracts as are now owned, held or reserved by the State of Ohio; but not to affect any right to the use of the water of said river now owned and held by the lessees of any water rights under any lease or contract with the State of Ohio. And the United States hereby assumes control of said river, subject to the paramount interest of navigation. The provisions of this act, so far as they relate to the Muskingum River, shall not take effect, nor shall the money hereby appropriated be available, until the State of Ohio, acting by its duly authorized agent, turns over to the United States all property ceded by the act of the General Assembly aforesaid, and all personal property belonging to the improvement aforesaid, and used in its care and improvement, and any balance of money appropriated by said State for the improvement of said river, and which is not expended on the fifteenth day of July, 1886." 24 Stat. 310, 324.

By deed of January 31, 1887, the Board of Public Works of Ohio, under legislative sanction, conveyed to the United States all the lands and tenements, with the rights and appurtenances thereto belonging, then owned, held and enjoyed by the State and theretofore occupied and used for canal and other purposes and known as the Muskingum River improvement.

During the years 1890 and 1891 the United States caused to be constructed a lock at the head of the rapids in the dam which the local authorities had maintained, and constructed from that lock down the river, under the bridge and through the rapids, an artificial canal outside of the main channel of the river, and raised the locks and dam on the river below, thus providing a new means of navigation at that point.

In the judgment of the United States' engineer having in charge the improvement of the Muskingum River, the construction by the Government of the new lock at Taylorsville made it necessary to place a draw in the Taylorsville bridge just below that lock. Of this fact the County Commissioners were informed, and they were given an opportunity to submit such statements, propositions and evidence bearing upon the matter as they might deem pertinent. Finally the following notice was issued from the War Department and served upon the commissioners:

" WAR DEPARTMENT.
" WASHINGTON CITY, February 25th, 1891.
" To the County Commissioners of Muskingum County, Ohio:
" Take notice that—

" Whereas the Secretary of War has good reason to believe that the bridge owned and controlled by Muskingum County, Ohio, across the Muskingum River, between Taylorsville and Duncans Falls, is an unreasonable obstruction to the free navigation of said river, (which is one of the navigable waters of the United States,) on account of not being provided with a draw span below the new United States lock No. 9 in said river; and

" Whereas the following alteration will render navigation through it reasonably free, easy and unobstructed, to wit, the construction of a draw span in said bridge below the said lock in accordance with the span shown on the map hereto attached; and

" Whereas to the 30th day of September, 1891, is a reasonable time in which to alter the said bridge as described above:

" Now, therefore, in obedience to and by virtue of the fourth

and fifth sections of an act of the Congress of the United States, entitled 'An act making appropriations for the construction, repair and preservation of certain public works on rivers and harbors, and for other purposes,' approved September 19th, 1890, Redfield Proctor, Secretary of War, does hereby notify the said County Commissioners of Muskingum County, Ohio, to alter the said bridge as described above, and prescribes that said alteration shall be made and completed on or before the 30th day of September, 1891.

" L. A. GRANT,

" *Assistant Secretary of War.*"

No alteration of the bridge having been made by the Commissioners within the time limited by the Secretary of War, the present information was filed against them on the 23d day of November, 1891. The information, after referring to the official character of the defendants and setting out the facts showing the action of the War Department touching the proposed alteration of the bridge, charged that the defendants as County Commissioners of Muskingum County " did unlawfully, on, to wit, the 15th day of October, 1891, at the place aforesaid, and after receiving notice to that effect, as hereinbefore required from the Secretary of War, and within the time prescribed by him, wilfully fail and refuse to comply with the said order of the Secretary of War, and to make the alterations set forth in said notice, contrary to the form of sections four and five of an act of Congress approved September 19th, 1890."

A trial was had which resulted in a verdict of guilty. A motion for new trial having been entered, the judges before whom it was argued differed in opinion, and certified the following points of disagreement to this court: 1. Whether Congress has the power to confer upon the Secretary of War the authority attempted to be conferred by said sections 4 and 5 of the act of September 19, 1890, to determine when a bridge is an unreasonable obstruction to the free navigation of a river. 2. Whether the failure to comply by persons owning and controlling the said bridge with the order of the Secretary of War could lawfully subject them to a penalty for a misdemeanor.

This court held that since the passage of the judiciary act of March 3, 1891, 26 Stat. 826, c. 517, certificates of division of opinion in criminal cases, according to §§ 651 and 697 of the Revised Statutes, were not authorized. *United States* v. *Rider*, 163 U. S. 132, 139. The certificate of division of opinion in this case was accordingly dismissed. Upon such dismissal the motion for new trial was denied in the Circuit Court in accordance with the opinion of the presiding judge, and it was adjudged that each of the defendants be fined in the sum of ten dollars. From that judgment the present writ of error has been prosecuted.

We have seen that by the fourth section of the River and Harbor Act of 1890 the Secretary of War was authorized, after due notice to the parties interested and after hearing them, to require persons or corporations owning or controlling any bridge over a navigable waterway of the United States which he had good reason to believe was an unreasonable obstruction to the free navigation of such waterway, to so alter the bridge as to render the navigation through or under it reasonably free, easy and unobstructed; and that by the fifth section of the same act it was made a misdemeanor for any person, corporation or association to wilfully fail or refuse to comply with the lawful order of the Secretary.

The plaintiffs in error contend that those provisions are inconsistent with the Constitution of the United States in that Congress has assumed to give the Secretary of War authority to determine matters that are legislative in their nature.

On behalf of the Government it is contended that the act of Congress has not delegated legislative power to the Secretary but has only given to that officer authority to determine the existence of certain facts as the foundation of such action by him as might be necessary to give effect to the declared purpose of Congress to remove unreasonable obstructions to the free navigation of the waterways of the United States. *Field* v. *Clark*, 143 U. S. 649, 693.

The discussion of counsel also involved the question whether —assuming the act in question not liable to the objection that it delegated legislative power to the Head of an Executive De-

partment—the expense to be incurred in the alteration of the bridge in question, which was originally constructed in accordance with law, must not be borne by the United States, which by its own agents made the proposed alteration of the bridge necessary for the purposes of navigation.

These are questions of very considerable importance. But in the view we have taken of the case, their determination is not now necessary. The record presents another question which, being determined in favor of the plaintiffs in error, requires a reversal of the judgment upon grounds that will protect them altogether against the present prosecution for not complying with the order issued from the War Department.

At the trial in the Circuit Court it was proved that the notice from the War Department to the County Commissioners to make and complete the required alteration of the bridge between Taylorsville and Duncan Falls on or before September 30, 1891, was served in March of that year; that there were then no funds in the hands of the Commissioners legally available for the purpose of making the proposed changes in the bridge; and that under the laws of Ohio defining and limiting the powers of the Commissioners, it was not possible for them by any levy of taxes to raise the money necessary to alter the bridge within the time limited by the notice from the Secretary of War or before the commencement of this prosecution.

It has not been suggested, nor could it reasonably be held, that the County Commissioners were bound, in any case, to provide out of their own private estates the money (several thousand dollars) necessary for the proposed alteration of the bridge, or that they could be made liable criminally for not so doing. The notice was addressed to them in their official capacity, and the prosecution against them was for failing to perform the duty alleged to be imposed upon them by the act of Congress. What they could or could not lawfully do, in the execution of the powers conferred upon them, must of course be determined by the laws of the State under whose authority they acted.

Assuming, for the purposes of the present decision, that the words " the persons, corporation or association owning or con-

trolling any railroad or other bridge," may, under some circumstances, apply to officers of municipal corporations, charged generally with the control and repairing of bridges owned by such corporations, the question remains whether any error of law was committed at the trial to the prejudice of the plaintiffs in error. The court charged the jury among other things: " Congress had the constitutional power to confer upon the Secretary of War the authority to determine when a bridge such as the bridge in question is an unreasonable obstruction to the free navigation of a river, and that the failure to comply by the person owning and controlling any such bridge, as by the defendants in this case, if they should so find, with such a determination by the Secretary of War, after due notice and otherwise full compliance with the act of Congress in that behalf, lawfully subjected them to prosecution for a misdemeanor, as provided by the act of Congress."

To this instruction the defendants duly excepted. Assuming the act of 1890 not liable to any constitutional objection, we think that the court, in view of the evidence, erred in saying, as in effect it did, that the mere failure of the defendants to comply with the order of the Secretary brought them within the act of Congress and subjected them to prosecution. The charge ignored altogether the proof showing that the defendants had no public moneys which they could have applied to the alteration of the bridge, and that under the laws of the State no money could be obtained, by way of taxation so as to make the required alteration within the time fixed by the Secretary of War. The court made the guilt of the accused depend alone upon the inquiry whether they had complied with the order of the Secretary of War. This was error. It ought not to be supposed that Congress intended, even if it had the power, to subject officers of a State to criminal prosecution for not doing that which it was impossible for them to do consistently with the laws of the State defining and regulating their powers and duties.

It is said that the record does not show that the Commissioners, prior to the order of the Secretary of War, suggested any want of public moneys in their hands that could be used in

altering the bridge or any want of power under the laws of the State to raise money for such a purpose by taxation, within the time limited for doing the work ordered. This is an immaterial circumstance. The record does show that the Commissioners from the outset protested against the expense of the proposed alteration being put upon the county and insisted that the United States, acting by its officers, having made that alteration necessary it should bear such expense. Nothing done or omitted to be done by the Commissioners estopped them from making any defence which the facts in the case justified. The liability of the Commissioners to criminal prosecution could not depend upon their mere failure to state to the engineer in charge of the Muskingum River improvements all that might have been urged against the demand made upon them by that officer.

We are of opinion that, however broadly the act of 1890 may be construed, it ought not to be construed as embracing officers of a muncipal corporation owning or controlling a bridge who had not in their hands, and under the laws of their State could not obtain, public moneys that could be applied in execution of the order of the Secretary of War within the time fixed by that officer to complete the alteration of such bridge. If the court on its own motion had instructed the jury, under the evidence in this case, to find for the defendants, it could not be held to have erred.

*The judgment is reversed, with directions for further proceedings consistent with this opinion.*